**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE<br>            Plaintiff<br><br>      v.<br><br>LYCOMING COLLEGE<br>One College Place<br>Williamsport, PA 17701<br><br><br>            Defendant | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

### I.      INTRODUCTION

1.      This case concerns a sexual assault against Jane Doe, a student at Lycoming College, committed by another Lycoming student, who Lycoming knew was a danger to its female students.

### II.      PARTIES

2.      Plaintiff Jane Doe, a pseudonym, is an adult citizen of Pennsylvania and a resident of the Middle District of Pennsylvania.  Plaintiff Jane Doe's identity and address are not disclosed here because of her desire to keep confidential her identity and address because she was a victim of nonconsensual sexual contact as described in this Complaint.  Plaintiff may be contacted by and through her counsel.

3.      Defendant Lycoming College is a private college, which receives federal funding, and is located at One College Place, Williamsport, PA 17701.

### III.    JURISDICTION

4.    This Court has jurisdiction as Plaintiff Jane Doe is asserting federal claims pursuant to 20 U.S.C. § 1681(c), Title IX, Education Amendments of 1972.

5.    This Court has supplemental jurisdiction over the remainder of the claims asserted against Defendant pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendant is subject to personal jurisdiction in the Middle District and the events and omissions giving rise to Plaintiff's claims occurred there.

### IV.    FACTS

7.    Prior to the fall of 2018, D.E. was accepted as a freshman to play basketball for Lycoming in order to make its Division III teams more competitive.

8.    D.E. was a freshman at Defendant Lycoming during the fall of 2018.

9.    He was a resident of the Asbury Hall dormitory and was on the varsity basketball team.

10.    Upon information and belief, during the fall semester of D.E.'s freshman year, he sexually assaulted a female student at Lycoming, which resulted in a Title IX investigation.

11.    D.E. repeatedly complained to students about having to meet with Dean Hummel about this incident.

12.    In addition, there were several incidents where D.E. went into female students' dormitory rooms uninvited in the middle of the night and refused to leave when asked.

13.    Despite Defendant Lycoming College's awareness of the sexual assault and threat that D.E. posed to students, especially, female students, Defendant allowed D.E. to remain on campus, play basketball, and reside in Asbury Hall.

14.     Despite Defendant's actual knowledge of D.E.'s sexual assault against a female student and the danger he posed to other Lycoming female students, Lycoming took no disciplinary action against D.E. and did nothing to protect its female students.

15.     This response by Defendant was deliberately indifferent to the known severe and pervasive sexual harassment being committed by D.E. and was clearly unreasonable in light of the known circumstances.

16.     During the Fall 2018 semester, Plaintiff Jane Doe was also a freshman at Lycoming College residing in Asbury Hall.

17.     Plaintiff met D.E. through mutual friends at Lycoming when D.E. had asked for Plaintiff's help on some of D.E.'s papers for class.

18.     On or about November 18, 2018, D.E. messaged Plaintiff on Snapchat and asked her to come to his room to cuddle.

19.     Prior to this day, Plaintiff and D.E. had hung out a couple times with friends, but had only kissed.

20.     Prior to this day, Plaintiff did not know that D.E. had previously sexually assaulted at least one other female student at Lycoming College.

21.     Prior to this day, Plaintiff also did not know that Lycoming had been aware of the report of D.E. assaulting another student and had failed to act to protect students, including Plaintiff.

22.     Prior to coming to D.E.'s room, Plaintiff made D.E. promise that they would only cuddle, nothing else.

23.     D.E. promised and Plaintiff went to D.E.'s room, which was on a different floor in Asbury Hall.

24.     When Plaintiff arrived to D.E.'s room, D.E.'s roommate was present, but was asleep.

25.     Plaintiff felt reassured of her safety due to D.E.'s roommate being present in the room.

26.     D.E. and Plaintiff were on D.E.'s bed and D.E. kissed Plaintiff.

27.     Plaintiff told D.E. she felt uncomfortable, but D.E. told Plaintiff not to worry about it.

28.     D.E. put his hand up Plaintiff's shirt and Plaintiff said "no" and removed his hand.

29.     D.E. then put his hand down Plaintiff's pants and under her underwear.

30.     Plaintiff told D.E. "no" again and removed his hand and pushed it away.

31.     D.E. took Plaintiff's hand and moved it over his genital area and Plaintiff said "no" and pulled her hand back.

32.     At this point, D.E. grabbed Plaintiff by the neck and told her "you're mine."

33.     Plaintiff became frightened of D.E. and D.E. instructed her to lay on top of him.

34.     Plaintiff did as she was told and D.E. wrapped his arms around her and began thrusting against her.

35.     Plaintiff again said "no" and Plaintiff moved herself off of D.E.

36.     Plaintiff began to have a panic attack and curled up into a ball on D.E.'s bed.

37.     D.E. then pulled Plaintiff in toward him and pressed Plaintiff's face into his neck.

38.     D.E. used his hand to masturbate himself against Plaintiff while Plaintiff's body felt very heavy and she was unable to move due to the panic attack and D.E.'s force in holding her against him.

39.     After D.E. finished masturbating on Plaintiff, he told her "I'm done with you. You can go now."

40.     Immediately, Plaintiff left D.E.'s room and went back to her floor in the dormitory and cried in the bathroom.

41.     Upon information and belief, D.E. is approximately 6'6" and 250 pounds and much larger and stronger than Plaintiff.

42.     Plaintiff reported the sexual assault to Kate Hummel, Associate Dean of Students/Deputy Title IX Coordinator, at Lycoming College.

43.     Dean Hummel asked Plaintiff if she wanted to file a police report and a police officer came to Lycoming to meet with Plaintiff.  After the meeting with the police officer, Plaintiff asked Dean Hummel for advice on whether she should file a report with the police about the assault.  Dean Hummel told Plaintiff that since there was no physical evidence, the police probably would not do anything and that Plaintiff would just get embarrassed if she filed a police report.

44.     Dean Hummel suggested that Plaintiff would be better off going through Title IX at Lycoming than filing a police report and Plaintiff listened to Dean Hummel and did not file a police report.

45.     Plaintiff requested a no-contact order, which was entered on November 26, 2018.

46.     A Title IX investigation was opened and Dean Hummel took statements from Plaintiff, D.E., and other students.

47.     Plaintiff was advised that she could bring a representative from the college with her to the Title IX hearing.

48.     Plaintiff chose to bring her psychology professor, but when they received the hearing date, Plaintiff's psychology professor had a conflict with that date.

49.     Plaintiff requested a different hearing date so that her professor could attend the hearing to support her, but Defendant denied Plaintiff's request.

50.     D.E. brought his basketball coach with him to the hearing.

51.     One of the panel members deciding the Title IX case asked D.E. at the start of the hearing how his basketball season was going.

52.     Throughout the Title IX hearing, the panel members asked D.E. questions like "has your basketball season been impacted by this?"; "how has this been impacting you?"; and suggested that D.E. "should try to go to counseling as this has been hard on you."

53.     According to the Title IX investigation notes of Dean Hummel, D.E. had tried to convince one of the witnesses, who could corroborate Plaintiff's version of events, to not cooperate with the Title IX investigation.  D.E. also asked that witness to lie to support D.E.'s falsified version of events.

54.     The Title IX panel found that D.E. was responsible for violating Lycoming's Sexual Harassment—Sexual Misconduct Policy by "Sexual Assault" and "Non-Consensual Sexual Contact", which, according to Lycoming's student handbook, is defined as, "intentional and unwelcomed touching of or coercing, forcing…another to touch a person's intimate parts (defined as genital area, groin, inner thigh, buttocks or breast) without consent."

55.     The Title IX decision report also noted that Plaintiff's recitation of events was corroborated by other statements and that she was credible.

56.     The report also noted that D.E. "was determined to be a less than credible source of information for this investigation."

57.     Despite D.E. being found responsible for sexual assault at the Title IX hearing, the sanctions issued were very lenient, deliberately indifferent, and clearly unreasonable in light of the known circumstances.

58.     Specifically, the sanctions allowed D.E. to remain a student at Lycoming College and a player on the basketball team, with the exception of missing one game.  D.E. also had to write a two-page, double-spaced paper about consent and go to one class run by a Lycoming professor about consent.

59.     D.E. was also told he was banned from Asbury Hall and had to move out immediately so that, according to Defendant, Plaintiff does "not have to worry that he will be in the building where you reside or feel unsafe in your residence."

60.     These sanctions were clearly unreasonable in light of Defendant's actual knowledge that D.E. had repeatedly sexually assaulted female students on Lycoming's campus, including, but not limited to, Plaintiff.

61.     Upon receiving the report with the Title IX hearing decision and lenient sanctions, Plaintiff was understandably upset and went home to get away from Lycoming's campus and be with her family.

62.     While at home, Plaintiff's friend contacted her and told her that D.E. was back in Asbury Hall, despite the sanction that he was supposed to be removed from the dormitory and not permitted access.

63.     When D.E. was confronted by Plaintiff's friend about him violating the sanction, D.E. said he did not care, would not leave, and that she could expect to see him in Asbury Hall every day of the week going forward.

64.     Upon hearing this, Plaintiff had another panic attack and was afraid to return to Lycoming College.

65.     Plaintiff and her mother contacted Lycoming College security to find out why D.E. was permitted back in Asbury Hall, despite the sanction that he was to be removed from the dorm.

66.     Lycoming security informed Plaintiff and her mother that they were unaware that D.E. was not permitted in the dormitory.

67.     Upon further investigation, Plaintiff learned that Lycoming staff and specifically, Dean Hummel, never told Lycoming security about the sanctions against D.E., including that he was not permitted in Asbury Hall.

68.     It took several days for D.E. to be removed from the dorm.

69.     Once D.E. was removed and his access card was no longer able to gain entrance to Asbury Hall, the swipe system registered D.E. attempting to enter into Asbury Hall many other times.

70.     Plaintiff was petrified of D.E. and was afraid he would be waiting for her in her dorm or somewhere on campus.

71.     Plaintiff's roommate described her to Dean Hummel as peeking out the door and looking both ways before exiting her dorm room because she was afraid of D.E.

72.     Dean Hummel's Title IX report noted that "this type of an extreme reaction is usually indicative of trauma, which further corroborates [Plaintiff's] statements."

73.     Plaintiff and her mother complained to Defendant Lycoming that it was not taking any action in response to D.E.'s flagrant violation of the sanctions.

74.     As a result of Plaintiff's repeated complaints, Defendant Lycoming apparently opened up a separate Title IX case against D.E., but did not provide Plaintiff with any information about that process or allow her input.

75.     Upon information and belief, as a result of the second Title IX investigation against D.E. following D.E.'s violation of the sanctions stemming from his sexual assault against Plaintiff, Defendant Lycoming suspended D.E. for the rest of the Spring 2019 semester with permission to return to Lycoming College in the fall of 2019.

76.     Following D.E.'s suspension, D.E. posted on social media that he would be back at Lycoming to harass Plaintiff.

77.     Plaintiff did not feel safe staying at Lycoming College knowing that Lycoming did not take D.E. sexually assaulting her seriously and that D.E. would be returning to campus.

78.     Therefore, Plaintiff had no choice but to drop out of Lycoming College.

79.     The sexual assault by D.E. was so severe, pervasive, and objectively offensive that Defendant Lycoming had a duty to address the harassment.

80.     Instead, Defendant Lycoming College was deliberately indifferent and deprived Plaintiff access to educational opportunities and benefits at the school.

81.     Plaintiff transferred to another college in the fall of 2019 and, in doing so, fell behind an entire year.

82.     Unbeknownst to Plaintiff, prior to Plaintiff being sexually assaulted by D.E., D.E. had previously sexually assaulted another female student at Lycoming, which resulted in a Title IX investigation.

83.     Even though Defendant Lycoming knew or should have known that D.E. was a danger to other students and, specifically, to Plaintiff, Defendant failed to warn Plaintiff or take steps to protect its students from sexual predator D.E.

84.     Upon information and belief, prior to D.E.'s sexual assault against Plaintiff, there was another basketball player, who sexually assaulted another Lycoming female student and despite a Title IX proceeding, Defendant allowed the other basketball player to remain on campus and continue to play basketball for Defendant.

85.     The deliberate indifference of Defendant Lycoming College to the risks posed by D.E. created and/or permitted the opportunity for D.E.'s sexual assault of Plaintiff on November 18, 2018, which resulted in a hostile educational environment for Plaintiff and deprived her of educational opportunities and benefits.

86.     As a result of the negligence, recklessness, and deliberate indifference of Defendant Lycoming College, Plaintiff suffered and continues to suffer serious and permanent injuries including, but not limited to:

    a.     sexual assault;

    b.     physical trauma;

    c.     psychological trauma;

    d.     sexual harassment;

    e.     assault and battery;

    f.     emotional distress;

    g.     post-traumatic stress disorder;

    h.     depression;

    i.     anxiety;

j.      embarrassment;

k.      humiliation;

l.      the need for counseling;

m.      the need for medication;

n.      loss of educational opportunities;

o.      the need to transfer schools;

p.      flashbacks;

q.      nightmares;

r.      past medical treatment;

s.      future medical treatment;

t.      additional tuition expenses;

u.      past medical expenses;

v.      future medical expenses; and

w.      impaired educational capacity.

## V. CLAIMS

### COUNT I
### Negligence
### Plaintiff v. Lycoming College

87.      All previous paragraphs are incorporated here by reference.

88.      Defendant had a duty to Plaintiff to act reasonably under the known circumstances.

89.      Defendant knew or should have known of D.E.'s dangerous sexual propensities against Lycoming's female students, including Plaintiff.

90.     Defendant had a duty to act to prevent D.E. from sexually assaulting other female students, including Plaintiff.

91.     Defendant knew or should have known that allowing D.E. to remain on campus and as a student, despite his prior sexual assault at Lycoming, increased the risk of harm to female students, including Plaintiff.

92.     It was foreseeable that D.E. would sexually assault another female student based on his past conduct.

93.     Defendant also owed a duty to Plaintiff under §§ 323 and 314(A) of the Restatement (Second) of Torts.

94.     Defendant breached these duties in failing to take reasonable disciplinary action against D.E.

95.     Due to Defendant's failures to act reasonably, D.E. sexually assaulted Plaintiff.

96.     In light of the known or foreseeable circumstances, Defendant's actions and inaction were completely unreasonable and reckless.

97.     Defendant Lycoming College's breaches to the duty it owed to Plaintiff include, but are not limited to:

    a.     Failing to protect Plaintiff from D.E., a known sexual predator;

    b.     Failing to warn Plaintiff of D.E.'s dangerous propensities;

    c.     Failing to remove D.E. as a student following the prior sexual assault;

    d.     Failing to remove D.E. as a student after Plaintiff's sexual assault;

    e.     Protecting D.E. at the risk of female students, including but not limited to, Plaintiff;

    f.     Failing to develop, adopt and follow policies to adequately prevent and address sexual assault, harassment and violence against its students;

g.      Failing to provide proper training to its employees and agents regarding Title IX and prevention of sexual assault;

h.      Failing to have proper policies and procedures in place for handling sexual assaults and the reporting of same;

i.      Failing to perform proper background checks into its students recruited to play sports;

j.      Failing to properly discipline D.E.;

k.      Failing to properly discipline other student athletes to prevent sexual misconduct;

l.      Creating an environment that emboldened male athletes to sexually assault females at Lycoming;

m.      Prioritizing financial incentives over the safety of its female students;

n.      Prioritizing its athletic programs and student athletes over the safety of its female students;

o.      Failing to provide a fair and impartial Title IX investigation and hearing;

p.      Failing to appropriately sanction D.E. following the sexual assault;

q.      Failing to enforce its sanctions against D.E. following the sexual assault;

r.      Creating a culture that allowed and encouraged sexual assault and harassment of students;

s.      Failing to provide Plaintiff with appropriate support and accommodations following the assault by D.E.;

t.      Failing to guarantee Plaintiff's right to education;

u.      Failing to keep Plaintiff safe;

v.      Failing to investigate the reports of sexual assault by D.E.;

w.      Failing to supervise D.E.;

x.      Failing to train its staff regarding sexual assault, sexual harassment and Title IX;

    y.  Failing to hire competent staff to address reports of sexual assault and harassment at Lycoming;

    z.  Failing to communicate the sanctions against D.E. to other departments; and

    aa.  Failing to act reasonably in light of the known circumstances.

98.  As a direct and proximate result of Defendant Lycoming College's negligence, recklessness, and deliberate indifference, Plaintiff sustained the injuries described in paragraph 86 above.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount greater than the local arbitration limits, including but not limited to compensatory and punitive damages with interest, attorney's fees, costs, and other such relief as the Court may deem appropriate.

## <u>COUNT II</u>
**<u>Intentional Infliction of Emotional Distress</u>**
**<u>Plaintiff v. Lycoming College</u>**

99.  All previous paragraphs are incorporated here by reference.

100.  Defendant acted intentionally and/or recklessly by failing to take appropriate and necessary acts to prevent D.E. from sexually assaulting and harassing Plaintiff, and acting in deliberate disregard of a high degree of probability that emotional distress would follow.

101.  Defendant's actions and inaction were extreme and outrageous and go beyond all possible bounds of decency.

102.  As a direct and proximate result of the breaches and failures by the Defendant, Plaintiff was caused to suffer bodily injury, emotional distress/injury, and damages which are permanent in nature and which are described more specifically above.

103.    Plaintiff's emotional distress was and is so severe that no reasonable person could be expected to endure such distress.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount greater than the local arbitration limits, including but not limited to compensatory and punitive damages with interest, attorney's fees, costs, and other such relief as the Court may deem appropriate.

## COUNT III
### Negligent Infliction of Emotional Distress
### Plaintiff v. Lycoming College

104.    All previous paragraphs are incorporated here by reference.

105.    The negligence and recklessness of Defendants caused severe emotional distress, anxiety, and mental anguish to Plaintiff.

106.    Plaintiff has suffered from increased emotional distress as a result of Defendant negligently and recklessly allowing D.E. to remain in school at Lycoming after the sexual assault.

107.    Plaintiff also suffered from severe emotional distress as a result of Defendant's negligence related to its failure to respond appropriately to D.E.'s prior assault at Lycoming.

108.    Defendant's negligent handling of its investigation and interviews following the sexual assaults also caused Plaintiff severe emotional distress with physical manifestations.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount greater than the local arbitration limits, including but not limited to compensatory and punitive damages with interest, attorney's fees, costs, and other such relief as the Court may deem appropriate.

**COUNT IV**
**Assault and Battery**
**Plaintiff v. Lycoming College**

109.   All previous paragraphs are incorporated here by reference.

110.   The sexual assault against Plaintiff, as described in detail in this Complaint, constituted an unlawful and unconsented touching, which is a battery under Pennsylvania law.

111.   Plaintiff was also sexually assaulted by D.E. due to the negligence, recklessness and deliberate indifference of Defendant.

112.   The battery and assault against Plaintiff resulted in physical and psychological injury, mental anguish, and other damages and losses, some of which are described above.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount greater than the local arbitration limits, including but not limited to compensatory and punitive damages with interest, attorney's fees, costs, and other such relief as the Court may deem appropriate.

**COUNT V**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.***
**Plaintiff v. Lycoming College**

113.   All previous paragraphs are incorporated here by reference.

114.   Defendant Lycoming College is an educational institution as defined by 20 U.S.C. § 1681(c), Title IX, Education Amendments of 1972 (hereinafter "Title IX"), which receives federal financial assistance.

115.   As recognized by the United States Department of Education in a July 1, 1998 press release, "Schools owe students a safe environment that is conducive to learning and that affords children equal educational opportunity regardless of sex."

116.    Prior to D.E. sexually assaulting Plaintiff, Defendant had actual knowledge of D.E.'s sexual assault against another Lycoming female student.

117.    This information was reported to employees and agents of Defendant Lycoming College, including but not limited to Defendant's Title IX Coordinator.

118.    These individuals and Defendant had the authority and ability to investigate and take meaningful corrective action to end and prevent D.E.'s repeated sexual assaults, violence and harassment, but failed to do so.

119.    Defendant Lycoming College, though its employees, agents, and servants, had the authority and responsibility to address discrimination and harassment (sexual or otherwise) and to institute corrective measures, and who had actual or constructive knowledge of harassment and discrimination in the school's programs, and who, despite such knowledge, failed to adequately respond to stop the harassment and discrimination against Plaintiff and take affirmative steps, which directly resulted in the severe sexual assault and harassment of Plaintiff.

120.    In at least one instance, Defendant Lycoming College opened a Title IX investigation against D.E. for his sexual assault of another female student, but did not take any disciplinary action against D.E.

121.    Defendant's actions and inaction were clearly unreasonable in light of the known circumstances.

122.    Defendant had an obligation under Title IX to address sexual violence that creates a hostile school environment.

123.    Through their action and inaction, Defendant was deliberately indifferent to the sexual assaults that D.E. was committing against other female students at Lycoming, which proximately caused injury to Plaintiff, including being sexually assaulted by D.E.

124.    Through their actions and inaction, Defendant created a climate in which sexual misconduct was tolerated and encouraged D.E.'s repeated sexual misconduct against female students and, specifically, Plaintiff.

125.    The sexual assault, harassment, and violence D.E. inflicted upon Plaintiff were severe, pervasive, and objectively offensive, and effectively barred Plaintiff's access to educational opportunities and benefits.

126.    The sexual assault, harassment and violence D.E. inflicted upon Plaintiff, along with Defendant's refusal to investigate, take any action, or adequate action in response to reports of D.E.'s sexual misconduct against Plaintiff and other students, effectively barred Plaintiff's access to educational opportunities and benefits.

127.    Plaintiff had to leave Lycoming College and transfer to another college, where she was deprived of the benefit of continuing her major and participating in extracurricular activities, interacting with peers and teachers that she had built a relationship with during her time at Lycoming.

128.    By its actions and inaction, Defendant acted with deliberate indifference toward the rights of Plaintiff to have a safe and secure education environment and materially impaired Plaintiff's ability to pursue her education at Lycoming College in violation of the requirements of Title IX.

129.    Specifically, Defendant violated Title IX by the following acts and omissions, all of which were conducted and/or failed to be conducted in reckless and deliberate indifference to the rights of Plaintiff guaranteed by Title IX and in reckless and deliberate indifference to the risk of harm posed to Plaintiff:

a.  Affirmatively recruiting, accepting and/or permitting the continued enrollment and involvement in athletic activities by D.E. at a time when Defendant knew that D.E. had previously assaulted and harassed other female students at Lycoming College;

b.  Actively disregarding known sexual harassment committed in the past at Lycoming College by D.E.;

c.  Failing to take immediate and appropriate corrective actions to remedy the known harassment by D.E. in the past at Lycoming;

d.  Taking steps that were known or should have been known to be ineffective in eliminating D.E.'s sexual misconduct;

e.  Failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

f.  Failing to have and disseminate an appropriate policy on sexual harassment;

g.  Failing to conduct a reasonably diligent inquiry regarding D.E.'s past sexual assaults and sexual harassing conduct;

h.  Completely failing to supervise D.E. when Defendant knew of his past inappropriate, dangerous and predatory behavior;

i.  Ratifying and accepting the past inappropriate actions of D.E.;

j.  Failing to have in place a "zero tolerance" policy for sexual harassment;

k.  Failing to adequately train staff members in Title IX requirements to protect against the sexual harassment of its students;

l.  Improperly investigating sexual misconduct of D.E. against Plaintiff;

m.  Failing to provide, offer, recommend, or coordinate accommodations for Plaintiff including, but not limited to health assessments, psychological counseling, academic assistance, support, protection and safety after she was sexually assaulted, harassed and violated by D.E., or being deliberately indifferent to it;

n.  Protecting D.E. despite multiple reports of his sexual assaults, harassment and violence against Plaintiff and other female students;

o.  Creating, through action and inaction, a sexually hostile educational environment in which allegations of sexual harassment and misconduct were not handled appropriately, therefore, exposing female students, including Plaintiff, to the risks of sexual assault and harassment;

p.  Failing to allow Plaintiff to have the advisor of her choice at the Title IX hearing;

q.  Failing to provide a new hearing date where Plaintiff could be supported by the advisor of her choice;

r.  Choosing to take no action to protect Plaintiff, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent D.E.'s assault, harassment, and violence against Plaintiff;

s.  Choosing to take inadequate action against D.E. following the sexual assault, harassment, and violence against Plaintiff;

t.  Failing to provide an unbiased panel to hear the Title IX proceeding;

u.  Failing to administer the Title IX proceeding fairly and appropriately;

v.  Issuing sanctions against D.E. that were clearly unreasonable in light of the known circumstances;

w.  Failing to enforce the sanctions against D.E. issued by Defendant;

x.  Failing to communicate the sanctions against D.E. with other College departments and representatives;

y.  Requiring Plaintiff to inform her professors of the sexual assault and fight for accommodations;

z.  Creating a climate that tolerated and encouraged sexual assault, harassment, violence and other misconduct and that tolerated the complete disregard and inadequate handling of reports of sexual misconduct by D.E., or were deliberately indifferent to them;

aa. Failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual assault, harassment, and violence;

bb. Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual assault, harassment, and violence;

cc. Failing to provide policy, procedures, or training for administrators, employees, agents and students about sexual assault and harassment;

dd. Failing to properly discipline D.E. for his sexual assaults against students, including Plaintiff;

ee. Failing to properly discipline D.E. for his blatant violation of the sanctions issued by the Title IX panel;

ff. Failing to terminate or otherwise discipline Defendant's employees and agents for their willful disregard to Plaintiff's safety and rights, or their deliberate indifference to her safety and rights;

gg. Failing to answer Plaintiff's questions regarding the sanctions against D.E.;

hh. Failing to allow Plaintiff to participate in Title IX investigation into D.E. resulting from his violations of sanctions from the Title IX investigation into his sexual assault against Plaintiff;

ii. Discouraging Plaintiff from filing a police report; and

jj. Failing to inform Plaintiff of the Title IX investigation against D.E. stemming from the violation of Title IX sanctions.

130.    Defendant's actions altered the conditions of Plaintiff's educational environment, denying her accommodations, advantages, facilities, and/or privileges associated with her attendance at Lycoming College and resulted in her having an extremely difficult time in school and total withdraw from classes at Lycoming College to attend school elsewhere.

131.    As a direct and proximate result of Defendant Lycoming College's actions, inaction and deliberate indifference, Plaintiff sustained and continues to sustain the injuries described in paragraph 86 above.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount greater than the local arbitration limits, including but not limited to compensatory and punitive damages with interest, attorney's fees, costs, and other such relief as the Court may deem appropriate.

FREIWALD LAW, P.C.

By: _____

AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Attorneys for Plaintiff

Dated:  November 6, 2020